JACK D. BELSANTI, Plaintiff-Appellant, v. CFS HOLDINGS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—90—2522

Opinion filed December 30, 1992.

Witwer, Burlage, Poltrock & Giampietro, of Chicago (Wayne B. Giampietro and Arlene Y. Coleman-Romeo, of counsel), for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Walter P. Loomis, Peter C. Woodford, and Kathleen M. Myalls, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:

This case addresses the issue of whether a company employee policy creates a contractual obligation which would be an exception to the employee at-will doctrine in Illinois. This action involves the alleged wrongful termination of plaintiff, Jack D. Belsanti, by his former employer, CFS Holdings, Inc. (CFS). The trial court granted summary judgment in favor of defendant on the basis that plaintiff had failed to state a cause of action as a matter of law.

Plaintiff was originally employed by CFS as a regional sales manager for 23 years, until 1973, when he voluntarily left the company. As a regional sales manager, plaintiff was responsible for the hiring and terminating of regional personnel. Plaintiff's deposition testimony stated that plaintiff was also given a company policy relating to employee discharge, which allegedly stated that a supervisor must "document, prepare and condition an employee that his job was in jeopardy and that if certain predetermined steps were not taken and improvement made, that separation from the company was an imminent situation."

In 1984, plaintiff was rehired by CFS in the position of branch office manager. Upon rehiring and during his tenure in this new position, plaintiff was not given a copy of the company policy regarding termination. However, plaintiff claims he presumed the policy was still in effect. In addition, plaintiff stated that the policy on termination was kept in a binder in the company personnel office, readily accessible to employees for their perusal.

In February of 1985, 13 months after his rehiring, plaintiff was told that his position was being eliminated in order to reduce expenses and overhead. Plaintiff responded that he had not been warned or conditioned for the termination. He was then told his performance evaluation was "not acceptable." After discharge, plaintiff informed his brother, a regional sales manager at CFS, who informed plaintiff that the company policy requires notice and reasonable cause prior to discharge. Plaintiff's brother then showed him a booklet on company termination procedures, which contained a policy almost identical to the policy in effect when plaintiff had been a manager. A copy of this policy, policy number C-10, entitled "Employee Relations Policies and Practices," was attached to plaintiff's amended complaint.

CFS filed a motion for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), stating that plaintiff could establish no contractual obligation which would prevent his termination at will by CFS. The trial court granted summary judgment for CFS on the grounds that the company policy had not been directly distributed to plaintiff, which would be necessary to the creation of a contract based on said policy.

■ In support of its motion for summary judgment, CFS relies upon the case of *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. In *Duldulao*, the Illinois Supreme Court held that a company handbook or other policy statement could create a contractual obligation, given the existence

of three elements: (1) the policy language must be clear enough that an employee would reasonably believe an offer had been made; (2) the statement must be disseminated in such a way that the employee is aware of its contents; and (3) the employee must rely upon and accept the offer by commencing or continuing work after learning of the policy.

Policy number C-10 reads in pertinent part:

"SUBJECT: *UNSATISFACTORY PERFORMANCE/ DISCHARGE*

*STATEMENT OF POLICY*

It is the Policy of CFS Continental, Inc., to discharge employees only when there is reasonable cause. It is also the Policy of CFS Continental when appropriate to help an employee correct performance or personal problems prior to making the decision to discharge for cause.

\*\*\*

*POLICY APPLICATION*

\*\*\*

B. When a performance or personal problem which could potentially result in termination has been identified through a formal performance appraisal review or otherwise, the following procedures should be followed prior to separation discussions with the employee:

1. Counsel the employee about the problem.

2. Identify the problem in writing, informing the employee of the consequences which will occur if the problem continues, and specifying a period of time during which the employee's performance or conduct will be closely monitored. (The length of the period should normally be between 30 and 180 days depending on individual circumstances.) During this period, the employee may be discharged if the above problems continue or if other serious problems develop."

First, CFS contends that the language of the policy is precatory rather than mandatory and, therefore, it cannot be an enforceable contract. We must determine, as a matter of law, whether an employee could reasonably rely upon the above language as a valid contractual promise. The "policy statement" very clearly states that an employee will be discharged *only* for reasonable cause. In addition, it is the company's policy to attempt correcting the problem prior to discharge. An employee, aware of this policy, could reasonably believe that (1) he would not be discharged without reasonable cause; and (2) he would be given notice and an opportunity to correct the problem leading to discharge. In fact, the next section on "Policy Application" sets forth specific step-by-step procedures for counseling the em-

ployee and correcting any problems in an effort to prevent discharge. We, therefore, find the language of the policy clear and definite enough to form a contractual promise to CFS employees.

Secondly, CFS contends that even if the policy could constitute a contract, the policy was never disseminated to plaintiff. *Duldulao* requires that the policy be disseminated in "such a manner that the employee is aware of its contents." The record reveals that policy C-10 was disseminated to location managers and department heads. Plaintiff's brother, who was a regional sales manager at the time of plaintiff's discharge, had previously received a copy of the policy from CFS. Plaintiff had also received a copy of a similar policy during his previous tenure with the company as a regional sales manager. Plaintiff also was aware that the policy was kept in a binder in the personnel office, along with all of the other company policies, which were available for perusal by CFS employees. CFS did not keep the policy confidential or in any way signify that it was strictly intended for management purposes. Not only was it available to all employees in the personnel office, the policy was clearly marked "Employee Relations Policies and Practices." In *Wojcik v. Commonwealth Mortgage Corp.* (N.D. Ill. 1990), 732 F. Supp. 940, 943, the court held unenforceable a policy which stated as its purpose: "*to provide management with termination guidelines.*" Moreover, a similar policy was distributed to plaintiff in his prior position as a regional sales manager, and this practice of distributing the policy to managers was still in effect at the time of plaintiff's discharge. We, therefore, find that the dissemination element of *Duldulao* was met.

Thirdly, CFS argues that plaintiff could not have accepted or continued employment in reliance on the policy, since he did not actually see the policy until it was shown to him by his brother after his termination. When plaintiff resumed working for the company in 1984, he presumed that there still existed a company policy of notification prior to termination. Although he did commence work in 1984, in a sense he was actually continuing his work for the same company. Given the unique circumstances of this case, we find that plaintiff did form a contractual relationship with CFS, by commencing and continuing to work for defendant in 1984, during his second term of employment. If plaintiff had not discontinued his employment with CFS in 1973, but simply had been demoted to a nonmanagerial position, plaintiff would be in a similar position, and we could not then conclude that plaintiff no longer could rely upon the company policy simply because he had been demoted.

■ Although we conclude as a matter of law that the employee policy of defendant created a valid contractual promise, there is still

the factual issue of whether in fact the termination policy was violated by CFS, in failing to notify plaintiff prior to discharge or counsel him to correct a problem with performance. At the time of discharge, plaintiff was told that his job was being eliminated, but his personnel records indicated that he was terminated for inadequate performance. The evidence regarding this issue presents a genuine issue of material fact to be properly decided by the trier of fact.

For all of the foregoing reasons, the decision of the circuit court granting summary judgment in favor of defendant is hereby reversed and this cause is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.